**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re EX PARTE APPLICATION OF EXCHANGE UNION COMPANY, et al.**,<br><br>*Applicants*. | **Case No. 2:26-mc-00036-JDW** |

## MEMORANDUM

"The good thing about having a family that doesn't love you is that you learn to live without it."[1] From the looks of things before me, the members of the Wo family have to start learning to live without it because they seem to be a family "whose discord and recriminations are such as to spawn legal action spanning international boundaries."[2] Their dispute has spawned intra-family litigation in Singapore and, now, this application for discovery in aid of that proceeding. Wo Weidong seeks to depose his daughter, Wo Qi, who he alleges was instrumental in misappropriating assets from his company. Ms. Wo challenges her father's ability to use 28 U.S.C. § 1782(a) to take discovery of her. She also moves for reciprocal discovery if I permit her father to take her deposition. Solving this family dynamic is beyond my ken. And, for the reasons that follow, I conclude that

[1] SUCCESSION: *Rehearsal* (HBO television broadcast, aired Apr. 2, 2023).
[2] *In re Saul Klein*, No. 23 MISC. 211 (PAE), 2023 WL 8827847, at *1 (S.D.N.Y. Dec. 21, 2023), *aff'd sub nom. Klein v. Altara RK Invs. Ltd.*, No. 24-228-CV, 2025 WL 560105 (2d Cir. Feb. 20, 2025).

this Court should not insert itself into the Wo family's dispute in Singapore. I will therefore quash Wo Weidong's subpoena to his daughter.

## I. FACTUAL ALLEGATIONS

In any good drama, the point of view determines how an outsider like me sees the facts. I will do my best to be a neutral narrator and recite each side's version of events.

### A. Mr. Wo's Side Of The Story

In the late 1990s and early 2000s, Mr. Wo founded the Huiyin Group, an investment firm spanning various sectors including medicine, information technology, and digital assets. The Huiyin Group expanded to include multiple companies, two of which Mr. Wo entrusted to his wife as his nominee for shareholding and directorship. As his digital asset holdings grew too large for him to handle alone, Mr. Wo formed a team of employees to help manage the operations and administration of his assets and various businesses that the Huiyin Group encompassed. Ms. Wo began to work for Mr. Wo and the Huiyin Group in July 2021. As part of her position, Ms. Wo had the means to manage and operate the Huiyin Group's bank accounts and assets, including the two businesses over which her mother held directorship.

In December 2023, Mr. Wo discovered that his daughter did not execute several transfers to certain accounts, as he had instructed. This led him to uncover that Ms. Wo had secretly transferred out "broad swathes" of digital assets, and shortly thereafter deleted all online chat threads between herself and Mr. Wo. (ECF No. 1-1 at 9.) Ultimately,

Mr. Wo's family members secretly transferred hundreds-of-millions of dollars out of several Huiyin Group accounts to which he had granted them access. He sued in Singapore, where he believed his wife and daughter were residing at the time. His claims center on the alleged misappropriation of his funds by his family members; his wife, daughter, and son.

### B. Ms. Wo's Side Of The Story

Ms. Wo's mother and father built the Huiyin Group together as a family business. Ms. Wo's mother was the sole shareholder of that business. In December 2023, after Mr. Wo tried to make unauthorized trades with company assets, Mr. Wo's mother asked that Ms. Wo suspend Mr. Wo's digital asset trading rights and transfer business assets out of the accounts that he could access. She did so, and then Mr. Wo began harassing his family members, leaving threatening voicemails for both his wife and daughter and dispatching individuals to their homes to intimidate them. After Mr. Wo's attempts to seize his family member's asserts "through theft and intimidation failed," he initiated the Singapore litigation. (ECF No. 18-33 at 9; ECF No. 18-1 at 2.)

### C. Procedural History

On April 21, 2026, Mr. Wo filed an *Ex Parte* Application For Judicial Assistance In Obtaining Evidence For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782, seeking testimony from Ms. Wo for use in the Singapore litigation. I granted the Application on May 6, 2026, authorizing the issuance of a subpoena. On June 6, 2026, Ms. Wo filed a

Motion To Vacate and Quash Mr. Wo's subpoena, arguing that Mr. Wo did not satisfy the requirements of Section 1782(a). In addition, Ms. Wo filed a Conditional Cross-Application For Reciprocal Discovery, which requests that if I deny Ms. Wo's Motion To Vacate And Quash, that I condition Mr. Wo's discovery under Section 1782(a) on her ability to conduct reciprocal discovery.

## II. STANDARD OF REVIEW

28 U.S.C. § 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony … for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).[3] When presented with an application, I must first determine whether the foreign litigant invoking Section 1782(a) meets three threshold statutory requirements. *See SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 590–91 (3d Cir. 2024). If I am satisfied that the statutory requirements have been met, I then consider the four discretionary factors outlined by the Supreme Court in *Intel Corporation v. Advanced Micro Devices*, 542 U.S. 241 (2004), to determine whether to exercise my discretion to grant the application. *SPS Corp I*, 110 F.4th at 591.

[3] Under these circumstances, where the Motion before me is Ms. Wo's Motion to Vacate And Quash because I have already granted Mr. Wo's initial Section 1782(a) application, "the Section 1782(a) framework governs" Ms. Wo's Motion. *See In re Walldorf Integration Sols. Ltd.*, No. 24-MC-0076, 2025 WL 4772284, at *2 n.4 (E.D. Pa. May 29, 2025) (citation omitted).

## III. DISCUSSION

### A. Article III Standing

I will first address Ms. Wo's standing argument because Article III concerns are always threshold questions for federal courts. Federal courts have determined time and again that if an applicant under Section 1782(a) meets the three statutory requirements, a federal district court may proceed, in its discretion, to order discovery. *See, e.g.*, *SPS Corp I*, 110 F.4th at 590–91; *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015); *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1129 (9th Cir. 2024). I am not free to read "extra-statutory barriers to discovery" into Section 1782(a) under the guise of exercising my broad discretion on these matters. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022) (citation modified); *Banoka S.a.r.l*, 148 F.4th 54, 65 (2d Cir. 2025). Ms. Wo's Motion requests that I do exactly that from which I must refrain.

To the extent there is any question that Article III standing is lacking here, Mr. Wo "has an interest in receiving the information that [he] seeks, and [he] has a statutory right, as an 'interested person' under [Section 1782(a)] to receive that information." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015). Moreover, an "injury in fact" may be imminent from Ms. Wo's "failure to disclose." *See id.* That is enough for Article III. *See id.*; *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

### B. Statutory Requirements

Under Section 1782(a), the applicant seeking discovery must show that: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by an 'interested person.'" *SPS Corp I*, 110 F.4th at 590–91 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 83–84 (2d Cir. 2004)).[4]

I begin with the first and third statutory requirements, neither of which Ms. Wo challenges. Ms. Wo "resides or is found" within this district because she was a student attending the Wharton School of Business at the University of Pennsylvania and living in Philadelphia at the time Mr. Wo served her with a Section 1782(a) subpoena.[5] Mr. Wo therefore satisfies the first statutory element. As for the third element, Mr. Wo qualifies as an "interested person" because he "would be a litigant in the contemplated merits proceeding" in Singapore. *SPS Corp I*, 110 F.4th at 591.

As to the second statutory requirement, to determine if discovery is "for use," I "assess the *practical ability*" of the applicant to place the requested material before a foreign tribunal. *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024) (citation modified)

[4] Third Circuit caselaw contains only a small number of cases addressing Section 1782(a). However, Second Circuit law contains a wide range of case law on the topic, which I find instructive and cite frequently throughout this Memorandum.

[5] It does not appear that Ms. Wo is still in the United States, which raises some question about my ability to enforce a ruling requiring her to comply with the subpoena. However, no one raised that issue, and given my ruling, I don't have to confront it.

(alteration in original). There is no "blanket foreign-discoverability rule" requiring that the materials sought under the statute be discoverable in the foreign jurisdiction. *Intel*, 542 U.S. at 260. Instead, the applicant need only show that there is a reasonable possibility that the requested evidence will be used with some advantage or serve some use in the foreign proceeding. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). If an applicant cannot identify a procedural mechanism to submit the materials, the discovery cannot satisfy the "for use" standard. *In re BonSens.org*, 95 F.4th at 80. However, a petitioner need only meet a "low threshold" to satisfy this factor. *In re Selman*, C.A. No. 23-895-CJB, 2024 WL 1092025, at * 3 (D. Del. Mar. 13, 2024) (quotation omitted).

Mr. Wo satisfies the second statutory requirement. Neither Party alerts me to any law or regulation confirming that the Singapore Court maintains a prohibition or ban on testimony taken by deposition. The Singapore Evidence Act provides various grounds to admit pretrial statements that a party to the proceedings makes on a numerous range of topics. (*See* ECF No. 18-24 at 2–9; ECF No. 20-3 at 2–9.) And the Singapore Rules of Court provide a mechanism for admitting those statements to the tribunal. (*See* ECF No. 20-2.) A procedural mechanism therefore exists through which Mr. Wo can submit Ms. Wo's deposition testimony to the Singapore Court. *Cf. BonSens.org*, 95 F.4th at 80. In fact, at least one case exists in which a court in Singapore considered evidence provided by a deposition taken in the United States after application under Section 1782(a). *See B High*

*House Int'l Pte Ltd. v. MDCP Phoenix Services Pte and another [2023] SGHC 12*, S 371 of 2020, ¶¶ 122, 124–27, 177, 244, 270, 284, 286 (Gen. Div. High Court).

Mr. Wo identifies several potential ways in which he may seek to use Ms. Wo's deposition testimony, including impeachment and to support his case in chief. He argues that her deposition will aid him to "further understand and demonstrate how [Ms. Wo] and the other Singapore Defendants seized and transferred control of the dissipated assets at issue in the Singapore Proceeding." (ECF No. 1-3.) That evidence is admissible as a basic matter under the Singapore Evidence Act because it is relevant to his claims, which accuse his family members (his daughter in particular) of misappropriating funds over which he claims ownership. In addition, Singapore's Evidence Act provides multiple grounds on which Mr. Wo could premise the admission Ms. Wo's deposition. As a result, there exists at least a reasonable possibility that the deposition would be to Mr. Wo's advantage or serve some use to him in the Singapore proceedings. *Mees*, 793 F.3d at 298; *In re Banco Mercantil del Norte, S.A.*, 126 F.4th 926, 931 (4th Cir. 2025).

Ms. Wo maintains that "depositions are rare in Singapore." (ECF No. 18-33 at 10.) However, in the same breath, she acknowledges that Singapore's evidence law does allow for the admission deposition testimony. (*See* ECF No. 18-33 at 10–11; ECF No. 18-1 at 8–9.) The practical ability for Mr. Wo to admit her deposition therefore appears undisputed. *See In re BonSens.org*, 95 F.4th at 80. It may be true that depositions are rarely admitted in Singapore, but I need only determine whether there is a reasonable *possibility* of

admission, not a reasonable *likelihood*. *See Mees*, 793 F.3d at 298. That possibility exists here.

### C. Discretionary Factors

Section 1782(a) does not mandate that District Courts permit foreign discovery. Instead, it "vests district courts with discretion to grant, limit, or deny discovery." *Banoka S.a.r.l.*, 148 F.4th at 64 (quotation omitted). The Supreme Court has identified four non-exclusive factors for a district court to consider in deciding whether to exercise its discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264–66. I consider the factors in light of Section 1782(a)'s "twin aims[:] providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. And I do not consider the factors mechanically. Instead, I have to consider "any other pertinent issues" bearing on a given discovery dispute. *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). As the party opposing discovery, Ms. Wo has

the burden of demonstrating any "facts warranting the denial of a particular application." *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011).

**1. Participant in foreign proceeding**

A "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. Thus, that court can require disclosure of "whatever evidence [its] laws require." *In re Nokia Techs. Oy*, C.A. No. 23-1395-CBW, 2024 WL 1675025, at * 3 (D. Del. Apr. 18, 2024). While there is no requirement that a party exhaust foreign discovery avenues, a party seeking discovery under Section 1782 must show that there is a need for the aid of U.S. Courts. Court should consider whether the discovery sought is within the foreign tributal's reach, and thus accessible absent § 1782 aid. *Kulzer v. Esschem, Inc.*, 390 Fed. App'x 88, 91 (3d Cir. 2010).

Ms. Wo's status as an active participant in the Singapore proceedings weighs heavily against Mr. Wo in this case. Ms. Wo has submitted seven written affidavits and has produced additional documents in the Singapore proceedings, including by complying with any order that the Singapore court might issue requiring additional disclosures from her. Her participation to date suggests that she will continue to participate in those proceedings. Certainly, Mr. Wo offers no evidence to think that she will not do so. And the rules in Singapore do appear to provide avenues for Mr. Wo to get information from Ms. Wo in the Singapore proceedings. He can seek additional affidavits. He can ask for an examination of her, which Mr. Wo concedes is a procedure akin to a deposition under

Federal Rule of Civil Procedure 27 to preserve testimony. And he can cross-examine her at trial.

Against this backdrop, Mr. Wo focuses on the fact that there is no way to compel Ms. Wo to submit to a discovery deposition in Singapore. That might be true, but it's of no moment. A foreign jurisdiction does not have to offer the same panoply of discovery devices as American courts. And the mere fact that rules in this country provide for depositions that might not be available in Singapore does not mean that this factor favors a deposition in this case. The simple fact is that Ms. Wo is participating in the proceedings in Singapore and making available the information that Singapore rules require. Mr. Wo's request amounts to his dissatisfaction with the discovery tools at his disposal in Singapore. That's not enough to justify the insertion of this Court into the Singapore proceedings, though.

**2. Nature of foreign tribunal**

Under the second *Intel* factor, I examine "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. I may consider receptivity generally, by evaluating the Singapore Courts as a whole, or specifically, by examining the specific foreign proceedings at issue. *See SPS Corp I*, 110 F.4th at 593.

I find no evidence to convince me that the Singapore Courts would not be receptive to deposition testimony taken in the United States. The Singapore Rules of Court allow for parties to seek a pretrial examination to be conducted outside of Singapore. And there is at least one case in which a court in Singapore considered deposition testimony taken in the United States pursuant to Section 1782(a). *See B High House Int'l Pte Ltd. v. MDCP Phoenix Services Pte and another [2023] SGHC 12*, S 371 of 2020, ¶¶ 122, 124–27, 177, 244, 270, 284, 286 (Gen. Div. High Court).

Ms. Wo argues that Mr. Wo's ability to "seek discovery … in the Singapore Courts rather than in U.S. courts" means that the Singapore Court would likely not be receptive to the federal district court's assistance. I find that this argument "conflates the question of whether a foreign court would allow analogous discovery … with the question of whether that could would *consider* evidence revealed in a [Section 1782(a] proceeding." *See In re Chevron*, 633 F.3d at 163 (emphasis added). The latter question is the inquiry relevant under *Intel*, and the answer appears to be that courts in Singapore would consider it.

As for whether the court hearing these proceedings in Singapore would accept the discovery at issue, neither Party presents clear evidence on this question. Because I find the record unclear on this issue, and because the burden falls on Ms. Wo to make an evidentiary showing, this factor favors Mr. Wo, though not strongly.

**3. Attempt to conceal or circumvent**

Under the third *Intel* factor, I examine "whether the [Section 1782(a)] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. A "proof-gathering restriction" is best understood as a rule that prohibits the gathering or use of certain materials rather than rules "that fail to facilitate investigation of claims." *Fed. Republic of Nigeria*, 27 F.4th at 153 (citation modified). "If there are two equally valid means to the same end and neither is meant to restrict use of the other, the choice of one over the other is not 'circumvention.'" *Id.*

As I have discussed, the Singapore Rules of Court allow for the admission of pretrial examinations. Neither Party presents evidence of a Singapore law or regulation that prohibits depositions taken outside of the country. Thus, there is no foreign-proof gathering restriction for Mr. Wo to circumvent. *See Fed. Republic of Nigeria*, 27 F.4th at 153. Ms. Wo is correct that "Singapore law dictates procedures for obtaining depositions" (ECF No. 18-33 at 17), but the simple fact that Singaporean law allows depositions does not mean that is seeks to prohibit depositions taken in the United States or obtained via Section 1782 rather than through Singaporean procedure. In fact, Singapore law provides that depositions may be acquired outside of Singapore. The third *Intel* factor therefore also weighs in Mr. Wo's favor.

**4. Unduly intrusive or burdensome**

An unduly intrusive or burdensome request made under Section 1782(a) "may be rejected or trimmed." *Intel*, 542 U.S. at 265. The underlying proceedings in this case concern assets that Mr. Wo claims he owned but were misappropriated through a "broad conspiracy" perpetuated by his two children, wife, and a former employee. (ECF No. 1-1 at 2.) Mr. Wo seeks to depose Ms. Wo to find out "what has become of certain misappropriated assets which beneficially belonged" to him, "to demonstrate how the misappropriation occurred," and to "support applications for interim relief to prevent the further disposition" of his assets. (*Id.* at 1.) The testimony he seeks to elicit is relevant to his claims in the Singapore litigation, and the time commitment of a single one-hour deposition is not overly burdensome.

I do not take lightly the allegations of harassment that Ms. Wo discusses in her pleadings. However, the requested deposition is sufficiently narrow, and no other facts presented lead me to believe it would be unduly burdensome or intrusive for Ms. Wo to sit for the deposition that Mr. Wo seeks. Instead, the deposition will be narrow and brief and therefore is not unduly intrusive or burdensome. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1273 (11th Cir. 2014) The fourth *Intel* factor weighs in Mr. Wo's favor as well.

The Supreme Court has instructed that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion" in certain Section

1782(a) matters. The discovery Mr. Wo seeks under the statute, the singular deposition of his daughter on issues relating to his claims in the Singapore litigation, do not raise a danger of offending foreign governments or upsetting parity between litigants.

**5. Overall weighing**

Three of the four *Intel* factors weigh in favor of denying the Motion and permitting Mr. Wo to enforce his subpoena. However, weighing the *Intel* factors is not just a mechanical exercise. In my view, this is not a case in which this Court should involve itself. The fact that Ms. Wo has been participating fully in the Singapore proceedings suggests strongly to me that Mr. Wo does not want to depose her just to gather information; he can do that through the Singapore court. Instead, it suggests that he wants to pressure his adversary through a form of discovery that she would find inconvenient. By the same token, the second and third factors appear to me to be factors intended to ensure that American courts do not intrude on foreign proceedings in a way that disregards comity concerns. So, when those factors tilt against granting a petition, courts must account for those concerns. However, the absence of comity concerns does not provide a strong enough push here to overcome the fact that courts in Singapore have tools available to them to get the information that Mr. Wo claims that he needs from Ms. Wo for the proceedings in Singapore.

## IV. CONCLUSION

I will deny the Motion to Vacate and Quash. In addition, I will deny the Conditional Cross-Application For Reciprocal Discovery as moot. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

October 21, 2026